# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNSTON FARMS, a general partnership,<br><br>        Plaintiff,<br><br>    v.<br><br>YUVAL YUSUFOV, an individual,<br><br>        Defendant.<br>_____/ | Case No. 1:17-cv-00016-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT YUVAL YUSUFOV BE GRANTED IN PART AND DENIED IN PART**<br><br>(Doc. 17)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I.    INTRODUCTION

On October 25, 2017, Plaintiff Johnston Farms filed a Motion for Entry for Default Judgment By Court Against Defendant Yuval Yusufov ("Yusufov" or "Defendant") (the "Motion").  (Doc. 17.)  No opposition to the Motion was filed.  The Motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  After having reviewed Plaintiff's papers and all supporting material, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing was vacated on December 15, 2017. (Doc.23.)

For the reasons set forth below, the undersigned RECOMMENDS that Plaintiff's Motion be GRANTED IN PART and DENIED IN PART.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a California general partnership based in Edison, California, engaged in the business of selling perishable agricultural commodities defined by the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* (Doc. 1 ("Compl.") ¶¶ 2, 17; Doc. 17-2, Declaration of Derek Vaughn in Support of Pl.'s Mot. for Default J. ("Vaughn Decl.") ¶ 5.) Between December 16, 2015, and February 15, 2016, Fresh Growers Direct, Inc. ("Fresh Growers"), which was in the business of buying PACA commodities, purchased produce from Plaintiff. (Compl. ¶¶ 11, 18; Doc. 21-1, Declaration of Derek Vaughn Re Additional Information in Support of Pl.'s Mot. for Default J. ("Vaughn Supp. Decl.") ¶ 5.) Defendant Yusufov is an "officer, director, shareholder, and/or controlling insider" of Fresh Growers. (*See* Compl. ¶ 4.)

Plaintiff delivered the produce and provided Fresh Growers with invoices for each shipment, setting forth in detail the amounts owed by Fresh Growers. (Compl. ¶¶ 11, 12; Doc. 17-3, Memo. of P&As in Support of Pl.'s Mot. for Entry of Default J. ("Memo.") at 2.) Each invoice also included the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c ) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(Vaughn Decl. ¶ 9 and Ex. 1.) The invoices further provided for finance charges on delinquent accounts at the rate of 1.5% per month, or 18% annually, and the recovery of attorney's fees and costs incurred in collecting the debt. (*See id.* ¶ 12 and Ex. 1.)

The outstanding balance on the shipments of produce accepted by Fresh Growers is $111,510.00, which Plaintiff has not received. (*See id.* ¶ 5.) Plaintiff filed the instant action on January 4, 2017, against Fresh Growers, Yusufov, and Gill Goldman alleging violations of PACA, breach of contract, breach of fiduciary duty with regard to assets in the PACA trust, unjust enrichment, conversion, and declaratory relief. (*See* Compl.) The Complaint seeks damages in

the amount of $111,510.00 plus interest, attorney's fees, and costs.

On March 21, 2017, Defendant Yusufov was served with the Summons and Complaint in this matter both by mail and by affixing copies to the door of his place of abode, pursuant to Fed. R. Civ. P. 4(e)(1) and NY CPLR § 308.4. (Doc. 6.) Defendant Yusufov failed to answer the Complaint or otherwise defend the action. On May 31, 2017, upon Plaintiff's request, the Clerk of this Court entered Defendant Yusufov's default under Federal Rule of Civil Procedure 55(b). (Doc. 10.) Plaintiff voluntarily dismissed Fresh Growers and Gill Goldman without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on October 25, 2017. (Docs. 18 & 19.)

On October 25, 2017, Plaintiff filed the Motion. (Doc. 17.) In it, Plaintiff specifically seeks the $111,510.00 in damages, as well as $14,220.00 in attorney's fees and $629.75 in costs, prejudgment interest, and post-judgment interest of 18% per annum. (*See* Memo. at 8.) With respect to the prejudgment interest, Plaintiff seeks $36,276.51 in interest up to and including November 29, 2017, and thereafter at a rate of $54.99 until judgment is entered. (*See id.*)

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

"In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)). As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo*, 826 F.2d at 917-18 (9th Cir. 1987). However, although well-pleaded allegations in the complaint are admitted by the defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**B.      The *Eitel* Factors Favor Entry of a Default Judgment.**

    **1.      Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers whether Plaintiff would suffer prejudice if default is not entered. Defendant was properly served on March 21, 2017, but has failed to appear and defend himself. If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendant participates and makes an appearance in the litigation—which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Therefore, Plaintiff would be prejudiced if the Court were to deny its application for default judgment. *Abbate Family Farms Ltd. P'ship v. G D Fresh Distribution, Inc.*, No. 1:12-CV-0303 LJO-BAM, 2012 WL 2160959, at *4 (E.D. Cal. June 13, 2012). This factor weighs in favor of default judgment.

    **2.      Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint**

The next relevant *Eitel* factors include the merits of the substantive claims pleaded in the Complaint as well as the general sufficiency of the Complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DirecTV, Inc. v. Huynh*, 503

F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

### a. PACA Violations

Plaintiff alleges a violation of PACA, 7 U.S.C. § 499e, against Defendant Yusufov.[1] PACA applies to sales of perishable agricultural commodities to "any commission merchant, dealer, or broker." *Id.* § 499e(a). PACA gives the suppliers of such commodities special rights designed to ensure payment. It requires that all produce-derived revenues "be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received . . . ." *Id.* § 499e(c)(2). Section 499b(4) requires buyers to "make full payment promptly." 7 U.S.C. § 499b(4).

To establish the existence of a PACA trust, Plaintiff must show that: (1) the commodities sold were perishable agricultural commodities; (2) the buyer was a commission merchant, dealer or broker; (3) the transaction occurred in interstate commerce; (4) the seller has not yet received full payment; and (5) the seller preserved its trust rights by giving proper notice to the buyer. *Abbate Family Farms*, 2012 WL 2160959, at *3 (citing 7 U.S.C. § 499e). A seller can use "ordinary and usual billing or invoice statements to provide notice of the [seller's] intent to preserve the trust." 7 U.S.C. § 449e(c)(4).

Plaintiff's allegations of the existence of a PACA trust are sufficient. Plaintiff pleads that from December 16, 2015, to February 15, 2016, it sold perishable produce through interstate commerce to Fresh Growers, who was the licensed commission merchant, and that Plaintiff has not received full payment for those sales. (Compl. ¶¶10–12, 17–19.) Plaintiff also claims to have complied with PACA's notice requirement under 7 U.S.C. 499e(c)(4) by submitting invoices including the requisite statutory language. (Vaughn Decl. ¶ 9 and Ex. 1.). Therefore, Plaintiff sufficiently alleges a PACA trust.

---

[1] Courts have an affirmative duty to examine their own jurisdiction—both subject matter and personal jurisdiction—when entry of judgment is sought against a party in default. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, since this is an action under PACA, federal subject matter jurisdiction arises under 28 U.S.C. § 1331. Because the state law claims arise out of the same factual allegations as the PACA causes of action, *see* Compl., the Court exercises supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(a).

Plaintiff alleges that Defendant Yusufov is personally liable for Fresh Growers' failure to pay Plaintiff. The Ninth Circuit has held that individuals associated with a corporate defendant may be liable under a PACA trust theory. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282–83 (9th Cir. 1997). In *Sunkist*, after surveying the decisions concerning individual liability under a PACA trust claim, the Court stated:

> The unanimous conclusion of the cases is that PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.
>
> We agree that individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.

*Id.* at 283 (citation omitted). Consequently, to establish personal liability, Plaintiff must make a showing that the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the liability. *See Superior Sales W., Inc. v. Revival Enterprises, Inc.*, No. SACV 13-352-JST (JPRx), 2013 WL 12136966, at *3 (C.D. Cal. June 18, 2013) (citing *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 707 (2d Cir. 2007)). Plaintiff must then show that the individuals controlled PACA trust assets and that the individuals breached their fiduciary duty to preserve those assets. *See Sunkist*, 104 F.3d at 283.

Plaintiff's Complaint does not allege any facts showing that Fresh Growers has insufficient assets to satisfy the liability, nor does it allege any facts as to the manner in which Defendant Yusufov improperly controlled the PACA trust assets, other than the conclusory allegation that Defendant Yusufov is an "officer, director, shareholder, and/or controlling insider" of Fresh Growers. (*See* Compl. ¶ 4.) Plaintiff did not present any evidence in support of its Motion of Defendant Yusufov's active management role in Fresh Growers, or of Defendant Yusufov acting for the corporation. Nor were there any facts in the Complaint or evidence submitted in support of the Motion showing how Defendant Yusufov breached his fiduciary duty with regard to assets in the PACA trust. However, in response to the Court's order[2], Plaintiff has submitted additional

---

[2] In its order entered on November 21, 2017, the undersigned directed Plaintiff to supplement the record with evidence that evidence showing that, during the relevant time period: (1) Fresh Growers had insufficient assets to satisfy the liability; (2) Fresh Growers was a closely-held corporation, Defendant Yusufov had an active management role in

evidence showing that Defendant Yusufov is listed as the president and "100.0%" owner of Fresh Growers in "Blue Book Services," a credit rating and information publication for the produce industry; that he is listed Fresh Growers' sole principal on its PACA license registration with the U.S. Department of Agriculture (USDA); and that he signed Fresh Growers' checks payable to Plaintiff in May 2016. (Vaughn Supp. Decl. ¶ 7 and Exs. 1, 2.) Moreover, Fresh Growers' PACA license has been terminated and the USDA has initiated administrative action against Fresh Growers in connection with $244,508.00 in unpaid amounts owed to five produce sellers, leading Plaintiff to believe that Fresh Growers has insufficient trust assets to pay the amounts protected under the trust. (*Id.* ¶¶ 7, 11 and Ex. 1.) From this, the undersigned finds that Plaintiff has alleged facts that Defendant Yusufov was in position in which he could control the assets of Fresh Growers. *See Four Rivers Packing Co. v. G.D. Fresh Distribution, Inc.*, No. 3:12-CV-89-ST, 2012 WL 2049320, at *2–3 (D. Or. Apr. 20, 2012).

Plaintiff also submits evidence of correspondence in the form of text messages between Plaintiff's Sales Manager Derek Vaughn and Defendant Yusufov from September and November 2016, where Defendant Yusufov writes that he made "some bad business mistakes," "got screwed over," is "very embarrassed," and is "working it out with paca." (Vaughn Supp. Decl. ¶¶ 10–11 and Ex. 3.) Defendant Yusufov also wrote that Fresh Growers "is out of business," but he pledged to "pay everyone back," including Plaintiff. (*Id.*) While this evidence does not conclusively establish that trust assets were dissipated by Defendant Yusufov, it is, combined with Defendant Yusufov's failure to appear and defend, sufficient to persuade the undersigned that Defendant Yusufov should be held personally liable to Plaintiff under PACA as a controlling person of Fresh Growers.[3] *See Henry Avocado Corp. v. Polo's Produce, Inc.*, No. 1:10–cv–01298 AWI JLT, 2010

Fresh Growers, and/or that Defendant Yusufov acted for Fresh Growers; and (3) Defendant Yusufov breached his fiduciary duty to maintain PACA trust assets.. (Doc. 20.) Plaintiff filed its submission addressing these issues on December 12, 2017. (Doc. 21.)

[3] The Court also concludes from the evidence Plaintiff submitted that the exercise of specific personal jurisdiction in California over Defendant Yusufov, who appears to reside in New York, is appropriate. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (setting forth the three-prong test for analyzing the presence of specific jurisdiction). As set forth above, Plaintiff asserts that Defendant Yusufov is the president and 100% owner of Fresh Growers, which, although operating out of New York, *see* Vaughn Supp. Decl. Ex. 1, did business in California, as evidenced by the fact that Plaintiff delivered the produce at issue to Fresh Growers in Visalia, California, *see* Vaughn Decl. Ex. 1. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (contacts approximating physical presence in California, such as doing business in

WL 4569136, at *2–3 (E.D. Cal. Nov. 3, 2010). *See also Four Rivers*, 2012 WL 2049320, at *3; *Wespak Distribs., Inc. v. Red Hawk Farming & Cooling LLC*, No. 09–cv–743–KI, 2010 WL 56104, at *4 (D. Or. Jan. 5, 2010).

### b. Conversion

Plaintiff also alleges a cause of action for conversion against Defendant Yusufov.[4] (Compl. ¶¶ 45–47.) Under California law, "[t]he elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-44 (1996)). Plaintiff alleges that it was and currently is entitled to possession of a specific principal sum, of which $111,510.00 remains due. (Compl. ¶ 46;

California, support the exercise of general personal jurisdiction). In his capacity as president and 100% owner of Fresh Growers, Defendant Yusufov controlled or was in a position to control the disposition of Fresh Growers' assets so as to ensure that there were sufficient assets to satisfy all outstanding PACA trust obligations such as the obligation allegedly owed to Plaintiff. (*See supra*.) Furthermore, Defendant Yusufov, in correspondence to Plaintiff's Sales Manager Mr. Vaughn (located in California), stated that he "made some bad business mistakes" and would pay Plaintiff back. (Vaughn Supp. Decl. ¶¶ 10–11 and Ex. 3.)

While it is true that the mere fact that Fresh Growers, a corporation, is subject to local jurisdiction does not necessarily mean Defendant Yusufov, a nonresident officer, is suable locally as well, *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999), the Ninth Circuit has held that the corporate form may be ignored where the corporate officer authorizes, directs, or participates in tortious conduct. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort"); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). Here, as set forth more fully above, the undersigned finds that Plaintiff has put forth sufficient facts showing that Defendant Yusufov was the primary participant and central figure in the alleged wrongdoing directed at Plaintiff, a California corporation, and involving shipments of produce to Fresh Growers in California. These facts, coupled with the allegations in the Complaint, if proven, establish that Defendant Yusufov had control of, and directly participated in the activities giving rise to this suit. *See POGA MGMT PARTNERS LLC v. Medfiler LLC*, No. C 12–06087 SBA, 2014 WL 3963854, at *6 (N.D. Cal. Aug. 12, 2014).

As the first two prongs of the test for specific jurisdiction have been met, *see Yahoo! Inc.*, 433 F.3d at 1206, Defendant Yusufov bears the burden of presenting a "compelling case" that the exercise of personal jurisdiction over him in California would be unreasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). He has failed to do so, having not appeared or defended the action. Finally, Defendant Yusufov was personally served with process in this case pursuant to Federal Rule of Civil Procedure 4(e)(1), *see* Doc. 6, and there is no indication in the record that service was improper. In sum, the exercise of personal jurisdiction over Defendant Yusufov by this Court is proper. *Cf. In re Tuli*, 172 F.3d at 712 ("A judgment entered without personal jurisdiction over the parties is void.").

[4] Plaintiff also asserts claims for unjust enrichment, declaratory relief, and recovery of finance charges, fees, costs, and interest. In the context of the Complaint, these three "claims" appear to be requests for particular forms of relief and not independent causes of action, notwithstanding the fact that Plaintiff labeled them as causes of action. Accordingly, the Court does not analyze these three claims separately. *See, e.g., Mission Produce*, 2016 WL 1161988, at *5 n.2.

Memo. at 2; Vaughn Decl. ¶ 6.)  Plaintiff further alleges that Defendant Yusufov has failed to turn over the amount due to Plaintiff and that Defendant Yusufov has "diverted, and will continue to divert payments of [Fresh Growers'] accounts receivable, assets of the PACA trust and monies due and owing to Plaintiff to themselves and to other unknown third parties."  (Compl. ¶ 47.) Plaintiff alleges that it has suffered damages from this conduct.  Plaintiff's allegations are therefore sufficient to state a claim for conversion.  *See Mission Produce, Inc. v. Organic All., Inc.*, No. 15-CV-01951-LHK, 2016 WL 1161988, at *8 (N.D. Cal. Mar. 24, 2016); *Gen. Produce Co. v. Warehouse Markets, LLC*, No. 2:13–cv–0750 MCE DAD, 2015 WL 1509187, at *3 (E.D. Cal. Apr. 1, 2015).

Because Plaintiff has sufficiently stated claims for violations of PACA and for conversion, the second and third *Eitel* factors weigh in favor default judgment.

### 3.     The Sum of Money at Stake in the Action

Turning to the fourth *Eitel* factor, "the court must [next] consider the amount of money at stake in relation to the seriousness of [the defendant's] conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77.  "This requires the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citing *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04–2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)).  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to [the] defendant's conduct."  *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (citing *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)); *see also BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment." (citations omitted)).  "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable."  *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citation omitted).

In support of its Motion, Plaintiff submitted the declaration of Derek Vaughn, Sales

Manager for Plaintiff.  (*See* Doc. 17, Ex. 2.)  In his declaration, Mr. Vaughn states that, Defendant Yusufov "agreed to pay Plaintiff in amounts at least as great as the principal sum of $111,510.00," but that Defendant Yusufov has "failed and refused, and continue[s] to fail and refuse, to pay Plaintiff for the produce purchased and no part of those sums due and owing has been paid except for any partial payments which are reflected in the balance due."  (Vaughn Decl. ¶¶ 5–6.) Additionally, attached to Mr. Vaughn's declaration are invoices and bills of lading from Plaintiff to Fresh Growers, confirming the sales of produce.  (*Id.* ¶ 5 and Ex. 1.)

The undersigned finds that Plaintiff has provided adequate evidence in the form of declarations and documentation to support its assertion that Plaintiff suffered harm in the amount of $111,510.00 due to Defendant Yusufov's conduct.  Furthermore, the record does not include any evidence or assertions indicating that $111,510.00 plus prejudgment and post-judgment interest is a disproportionate amount of money compared to the harm caused by Defendant Yusufov's conduct.  The undersigned therefore finds that the sum of money at stake in this action—$111,510.00 plus prejudgment and post-judgment interest—is sufficiently proportionate to the harm caused by Defendant Yusufov's conduct to satisfy the fourth *Eitel* factor.  *See, e.g., Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921 (finding that the fourth Eitel factor weighed in favor of granting default judgment where, in part, the plaintiff "proffer[ed]" a declaration providing the amount "still due and owing")

### 4.    The Possibility of a Dispute Concerning the Material Facts

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case."  *United States v. Sterling Centrecorp, Inc.*, No. 2:08–cv–02556 MCE JFM, 2011 WL 2198346, at *6 (E.D. Cal. June 6, 2011) (quoting *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)).  There is little possibility of dispute in this case.  Plaintiff included well-pleaded allegations in the Complaint, which the Court accepts as true in the instant analysis, as well as evidence that Defendant Yusufov is liable under PACA and for conversion under state law.  (*See* Compl.)  Additionally, Plaintiff has provided evidence supporting its assertion that it is owed an outstanding balance of $111,510.00 as of October 24, 2017.  (Vaughn Decl. ¶¶ 40–41.)  Finally, Defendant Yusufov declined to

10

participate—or even appear—in this case to contest Plaintiff's allegations. The undersigned therefore finds that, based on the record in this case, the fifth *Eitel* factor weighs in favor of granting default judgment. *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1013 ("Since [the plaintiff's] factual allegations are presumed true and [the defendant] has failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment."); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922 ("Since [the plaintiff] has supported its claims with ample evidence, and [the] defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

### 5. Whether Default Was Due to Excusable Neglect

"The [sixth] *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect." *Vogel*, 992 F. Supp. 2d at 1013 (citation omitted). *See generally United States v. Sanders*, Case No. 1:16-cv-00031-DAD-SAB, 2016 WL 5109939, at *4 (E.D. Cal. Sept. 20, 2016) ("Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003))). In the present action, the record reflects that Plaintiff effectuated service on Defendant Yusufov on March 21, 2017. (*See* Doc. 6.) Nonetheless, Defendant Yusufov failed to respond to the instant Motion or otherwise participate in this litigation. It is therefore "unlikely" that Defendant Yusufov's "failure to answer, and the resulting default[] entered by the Clerk of Court, [was] the result of excusable neglect." *State Farm Life Ins. Co. v. Canul*, No. 1:11–cv–01787, 2012 WL 1192778, at *3 (E.D. Cal. Apr. 10, 2012) (citing *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)); *see, e.g.*, *Kuei*, 194 F. Supp. 2d at 1005 (finding that the defendants' default could not "be attributable to excusable neglect" where they "were properly served with the [c]omplaint, the notice of entry of default, [and] the papers in support of the . . . motion" for entry of default judgment); *see also Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable

neglect'"). Accordingly, the undersigned finds that this factor weighs in favor of granting Plaintiff's request for the entry of default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

The seventh and final *Eitel* factor requires consideration of "the strong policy favoring decisions on the merits." *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-LB, 2016 WL 1559717, at *10 (N.D. Cal. Apr. 18, 2016) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Of course, the "general rule" is "that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citation omitted); *see also Collin v. Zeff*, No. CV12–8156 PSG (AJW), 2013 WL 3273413, at *7 (C.D. Cal. June 24, 2013) ("The Ninth Circuit has emphasized that 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" (quoting *United States v. Signed Pers. Check No. 730 of Ybran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010))). As default judgment would dispose of this case on grounds other than the merits of Plaintiff's claim against Defendant Yusufov, the undersigned finds that this factor weighs against the entry of default judgment. *See, e.g.*, *United States v. Ordonez*, No. 1:10–cv–01921–LJO–SKO, 2011 WL 1807112, at *3 (E.D. Cal. May 11, 2011) (noting that the seventh *Eitel* factor "inherently weighs strongly against awarding default judgment in every case"). Nonetheless, as Defendant Yusufov's failure to participate in this litigation makes "a decision on the merits impractical, if not impossible," the Court "is not precluded from entering default judgment against" him. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### 7. Conclusion

In sum, six of the *Eitel* factors weigh in favor of default judgment, while the strong policy in favor of deciding cases on their merits weighs against the entry of default judgment. "While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012)

(citations omitted). As only this policy consideration weighs against default judgment, the undersigned finds that, on balance, the *Eitel* factors favor the entry of default judgment against Defendant Yusufov. *See, e.g., Ordonez*, 2011 WL 1807112, at *3 (finding that, "[i]n the aggregate," the seventh *Eitel* factor "is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment"); *Warne*, 2012 WL 1156402, at *3 ("In the aggregate, the seventh *Eitel* factor is outweighed by the other six factors that weigh in favor of default judgment." (citation omitted)).

## C.   Amount of Judgment

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *Warne*, 2012 WL 1156402, at *4 (quoting *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010)). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *United States v. Yermian*, Case No. SACV 15-0820-DOC (RAOx), 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) (quoting *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06–CV–03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)). Additionally, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris USA, Inc.*, 219 F.R.D. at 499. "[I]f the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Id.* at 498 (citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). "Entry of default judgment for money is appropriate without a hearing if 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Warne*, 2012 WL 1156402, at *4 (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)); *see also Yermian*, 2016 WL 1399519, at *3 ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment." (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991))).

### 1. Unpaid Produce

Under PACA, a dealer who violates its provisions "shall be liable to the person or persons injured thereby for the full amount of damages...sustained in consequence of such violation." 7 U.S.C. § 499e(a). Here, Plaintiff requests $111,510.00 in actual damages from Defendant Yusufov. (Compl. ¶¶ 12, 15, 35; Memo. at 8.) This amount in damages is supported by the declaration of Plaintiff's Sales Manager, Mr. Vaughn. (*See* Doc. 17, Ex. 2.) The undersigned finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden in establishing an amount of damages of $111,510.00. The undersigned therefore recommends that the presiding district court judge award Plaintiff actual damages in the amount of $111,510.00.

### 2. Interest, Attorney's Fees, and Costs

The Ninth Circuit has held that, in addition to the invoice value of unpaid produce, PACA permits a plaintiff to recover prejudgment interest as well as attorney's fees and costs if the contract between the plaintiff and the defendant stated that the defendant would be liable for interest, attorney's fees, and costs. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224–25 (9th Cir. 2002); *Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, No. 14–cv–01096–JSC, 2014 WL 5700695, at *4–5 (N.D. Cal. Nov. 3, 2014) (holding that a PACA plaintiff was entitled to prejudgment interest, attorney's fees, and costs based on the contract between the plaintiff and the defendant). The statute that allows a plaintiff to enforce a USDA reparation award in district court also allows the prevailing plaintiff to collect "a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 7 U.S.C. § 499g(b).

In this case, Plaintiff alleges that its "contractual agreement" with Fresh Growers provided that Fresh Growers would be liable for interest at 18% per year on any overdue payments as well as for attorney's fees and costs associated with recovering any such overdue payments. To support Plaintiff's allegation, Plaintiff points to the invoices it sent to Fresh Growers, all of which include the following language:

> Buyer agrees to pay all costs of collection, including attorney's fees and costs, as additional sums owed in connection with this transaction in the event that collection

action becomes necessary.

Past Due Accounts will be assessed a service charge at the rate of 1 1/2 % per month or 18% per annum from the date of the invoice.

(Vaughn Dec. Ex. 1.)

The Ninth Circuit in *Middle Mountain* declined to reach the issue of whether invoices were sufficient to establish a contractual right to interest, attorney's fees, and costs and instead remanded the issue to the district court. *See* 307 F.3d at 1225. In other contexts, however, the Ninth Circuit has held that terms in an invoice for the sale of goods are included in the parties' contract. *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 976 (9th Cir. 1996) (awarding concrete suppliers prejudgment interest based on the terms in the supplier's invoices). Other courts in this District have determined that contractual language on invoices is sufficient in PACA cases to establish contractual obligations, including obligations to pay prejudgment interest, attorney's fees, and costs. *See, e.g., Sequoia Sales, Inc. v. P.Y. Produce, LLC*, No. CV 10–5757 CW (NJV), 2011 WL 3607242, at *8 (N.D. Cal. July 29, 2011) ("Because language contained in invoices regarding attorneys' fees and interest creates an enforceable contract . . . Defendants are liable for attorneys' fees and interest."); *Henry Avocado Corp.*, 2010 WL 4569136, at *5 ("district courts within this Circuit have imposed contractual obligations as to terms first expressed in invoices preserving a PACA trust"); *Rey Rey Produce SFO, Inc. v. M & M Produce & Food Service Supplies, Inc.*, No. C05–4504 BZ, 2006 WL 1867633, at *4 (N.D. Cal. July 5, 2006) ("The attorney's fees provision in the invoices creates a contractual right binding defendants, and plaintiff is therefore entitled to properly documented attorney's fees necessarily incurred in collection.").

The undersigned concludes that Plaintiff's invoices are sufficient to establish that Plaintiff is entitled to collect prejudgment interest, attorney's fees, and costs from Defendant Yusufov. *See Horti Americas, LLC v. Steven Produce King, Inc.*, No. 16 Civ. 889 (ILG) (RER), 2017 WL 3610519, at *4 (E.D.N.Y. Aug. 22, 2017) ("[A]n individual PACA trustee is also liable for attorney's fees and prejudgment interest in connection with a PACA transaction.") (citing *Coosemans*, 485 F.3d at 709). Plaintiff's requests for interest, attorney's fees, and costs are therefore considered in turn.

###### a. Interest

Plaintiff requests $36,276.51 in prejudgment interest through and including November 29, 2017, plus $54.99 per day from November 30, 2017, through the date of judgment. (*See* Memo. at 8.) In support of this request, Plaintiff provides a spreadsheet calculating interest at 18% annually as provided for in Plaintiff's invoices. (*See* Declaration of Bart M. Botta in Support of Pl.'s Mot. for Entry of Def. J. ("Botta Decl.") ¶¶ 8–9 and Ex. 1.) This spreadsheet shows accrued interest of $36,276.51 in prejudgment interest through and including November 29, 2017. (*Id.* Ex. 1.) The undersigned finds that Plaintiff's calculations are sufficient to establish Plaintiff's entitlement to $36,276.51 for prejudgment interest on the invoice value of the unpaid produce through and including November 29, 2017. Moreover, Plaintiff has shown that it is entitled to an additional prejudgment interest, calculated as $54.99 per day from November 30, 2017 through the date of judgment.

Plaintiff also requests that the Court order post-judgment interest at the rate of 18%, rather than the interest rate specified in 28 U.S.C. § 1961. (*See* Memo. at 9–10.) Under § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and the interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield" for the week preceding the date of judgment. 28 U.S.C. § 1961(a).

Despite the mandatory language of § 1961, Plaintiff argues that "judicial authority" permits a post-judgment rate of 18%. (Memo. at 10.) However, the cases that Plaintiff cites in support of this argument provide only that courts have discretion to determine prejudgment interest in PACA claims. *See Banks v. Gill Distribution Ctrs., Inc.*, 263 F.3d 862, 871 (9th Cir. 2001) ("The federal prejudgment interest rate applies to actions brought under federal statute ... unless the equities of the case require a different rate."); *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1130 (N.D. Cal. 2010) ("The court therefore awards . . . damages, including prejudgment interest."); *Delta Pre-Pack Co. v. Gitmed*, 2:09-cv-01620-WBS-GGH (Doc. 10 at 2) (E.D. Cal. Jun. 11, 2009) ("The court has discretion to determine prejudgment interest in PACA claims."). Plaintiff has cited no authority for the proposition that courts have discretion to change

the *post-judgment* interest rate dictated by 28 U.S.C. § 1961. Indeed, this position is contrary to the mandatory language of § 1961, which states that interest "*shall* be calculated ... at a rate equal to the weekly average 1-year constant maturity Treasury yield." 28 U.S.C. § 1961(a) (emphasis added). Therefore, the Court recommends that Plaintiff be entitled to post-judgment interest only at the rate dictated by 28 U.S.C. § 1961. *See Golden W. Veg, Inc. v. Bartley*, No. 16-CV-03718-LHK, 2017 WL 2335602, at *9 (N.D. Cal. May 30, 2017).

### b. Attorney's Fees and Costs

Plaintiff may recover attorney's fees based on the same contract created by the invoices. Each invoice states that the "[b]uyer agrees to pay all costs of collection, including attorney's fees and costs, as additional sums owed in connection with this transaction in the event that collection action becomes necessary." (Vaughn Decl. Ex. 1.) That language is sufficient to support Plaintiff's request. *See Wahluke Produce, Inc. v. Guerra Mktg. Int'l Inc.*, No. 1:11–cv–1981 LJO–BAM, 2012 WL 1601876, at *6 (E.D. Cal. May 7, 2012); *Sequoia Sales, Inc. v. P.Y. Produce*, LLC, No. CV 10–5757 CW (NJV), 2011 WL 3607242, at *19–21 (N.D. Cal. July 29, 2011) (citing *Coosemans*, 485 F.3d at 709).

Courts in the Ninth Circuit calculate attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). The reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 895; *see also Shirrod v. Office Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The relevant legal community is the forum where the district court sits. *Shirrod*, 809 F.3d at 1086. The fee applicant bears the burden of showing that the requested rates are "in line with those prevailing in the community." *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Camacho*, 523 F.3d at 980); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases,

particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.")

The presiding district court judge in this case previously found that the "current reasonable range of attorneys' fees" for cases litigated in the Eastern District of California's Fresno division "is between $250 and $400 per hour." *Barkett v. Sentosa Props. LLC*, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (citing *Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014)). Within this range, "the highest rates [are] generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Id.* (quoting *Silvester*, 2014 WL 5797828, at *4).

Here, Plaintiff seeks an award of $14,220.00 for 36.0 hours of work expended by Bart M. Botta, Esq., at an hourly rate of $395. (Memo. at 8; Botta Decl. ¶¶.) With regard to the hourly rate, Mr. Botta states in his declaration that he is a "senior partner" at Rynn & Janowsky, LLP, a "well known law firm within the agricultural industry for its specialization in PACA trust enforcement," and "has "over 20 years of experience with enforcement of PACA trust rights on behalf of unpaid produce shippers." (Botta Decl. ¶¶ 11, 12.) Mr. Botta's hourly rate of $395 is within the range of reasonable hourly rates in the community for attorneys with similar levels of experience. *See, e.g., Barkett*, 2015 WL 5797828, at *5 (citing *Silvester*, 2014 WL 7239371, at *4); *see also Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *12 (E.D. Cal. Oct. 4, 2016) ("In the Fresno Division of the Eastern District of California, attorneys with . . . twenty or more years of experience are awarded $350.00 to $400.00 per hour." (collecting cases)). As Plaintiff has submitted adequate evidence in the form of a declaration establishing Mr. Botta's over twenty years of PACA experience, *see* Botta Decl., the undersigned finds that $395 per hour is reasonable for Mr. Botta. *See Phillips 66 Co. v. California Pride, Inc.*, No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. July 6, 2017) (finding that the hourly rate of $400 was reasonable for an attorney with "twenty years of relevant experience"), *adopted by* 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017).

Regarding the number of hours expended by Mr. Botta, the Court has reviewed counsel's declaration and timesheets, which contain descriptions of each activity performed and list time worked in increments of hundredths of an hour.  The Court finds Plaintiff's timesheets adequately detailed and the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is not and should be reduced.

On May 31, 2017, the Court ordered Plaintiff, by June 16, 2017, to file proofs of service of the Complaint as to Fresh Growers and Gill Goldman, or a status report indicating whether Plaintiff intended to continue to prosecute the case against them.  (*See* Doc. 11.)  The Court further ordered Plaintiff to file its motion for default judgment as to Defendant Yusufov within 21 days of entry of the order.  (*See id.*)  No proof of service, status report, or motion for default judgment was filed within the applicable time period, and, on July 11, 2017, the Court entered an order to show cause requiring Plaintiff to file a statement showing cause why the Court should not recommend to the presiding district court judge that the action be dismissed for failure to comply with the Court's May 31, 2017 order and for want of prosecution.  (Doc. 12.)  On July 18, 2017, Mr. Botta recorded 2.90 hours drafting Plaintiff's response to the Court's order to show cause, which should not have been required had Plaintiff complied with the Court's May 31, 2017 order.  (*See* Botta Decl. Ex. 2.)  Accordingly, the undersigned finds that Plaintiff's request for fees incurred as a result of Plaintiff's having to prepare a response to the Court's order to show cause is unreasonable.

In addition, Mr. Botta recorded 2.50 hours on September 21, 2017, for reviewing the Court's August 30, 2017, minute order discharging the order to show cause (Doc. 14) and preparing a status report to the Court (Doc. 15).  (*See id.*)   Reviewing the Court's minute order, which was only three sentences long, should have taken only a few minutes.  Plaintiff's status report, filed September 21, 2017, totaled four pages.   The Court finds that 1.5 hours is a reasonable amount of time for counsel to have spent reviewing a three-sentence minute order and a drafting four-page response, and will therefore deduct 1.0 hours from the time billed.  While reviewing short Court orders and responding thereto does take time, billing judgment must be exercised in the accumulation of billing entries of this type.  *See Hensley v. Eckerhart*, 461 U.S.

424, 433–34 (1983) (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).

In sum, the Court finds that 32.1 hours of the time expended by Mr. Botta is reasonable; thus, a reduction of 3.9 hours is warranted.[5] The undersigned therefore recommends that Plaintiff be awarded $12,679.50 in attorney's fees.

Plaintiff also requests costs totaling $629.75, calculated as $400.00 for the civil filing fee, plus $229.75 in process server fees, as documented in Mr. Botta's declaration and its attachments. (*See* Botta Decl. ¶ 14 and Ex. 3.) The costs for filing and service fees are properly recoverable by Plaintiff. *See, e.g.*, *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshall under [Federal Rule of Civil Procedure] 4 may be recovered; private process servers' fees are properly taxed as costs." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990))). *See generally Alflex Corp.*, 914 F.2d at 178 ("In making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent to make service of process a taxable item. . . . Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1)."). Accordingly, the undersigned recommends that the assigned district judge award Plaintiff $629.75 in total costs—$400 for filing fees and $229.75 for service fees.

//

//

//

---

[5] It appears that Mr. Botta did not bill his client for several time entries and that unbilled time was not included in Plaintiff's request for attorney's fees. (*See, e.g.*, Botta Decl. Ex. 2 (noting "no charge" next to 7/14/16 and 10/3/16 entries worth $197.50.)

# IV. CONCLUSION AND RECOMMENDATIONS

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. Plaintiff Johnston Farms' Motion for Entry of Default Judgment By Court Against Defendant Yuval Yusufov (Doc. 17) be GRANTED IN PART and DENIED in part, as specified below;

2. The court enter a default judgment against Defendant Yuval Yusufov in the amount of $111,510.00;

3. Defendant Yuval Yusufov be ordered to pay Plaintiff Johnston Farms $12,679.50 in attorney's fees (31.7 hours at $395 per hour), and costs of suit in the amount of $629.75, for a total of $13,309.25;

4. Defendant Yuval Yusufov be ordered to pay Plaintiff Johnston Farms $36,276.51 in prejudgment interest up to and including November 29, 2017;

5. Defendant Yuval Yusufov be ordered to pay Plaintiff Johnston Farms prejudgment interest at the rate of $54.99 per day from November 30, 2017, until judgment is entered; and

6. Defendant Yuval Yusufov be ordered to pay post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendant Yuval Yusufov at his last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the

specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __December 24, 2017__                    /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE